J-S34035-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SEAN JOSE RAIN, | : | |
| | : | |
| Appellant | : | No. 1894 WDA 2017 |

Appeal from the Judgment of Sentence October 5, 2015
in the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001010-2014

BEFORE:  BOWES, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED AUGUST 14, 2018**

Sean Jose Rain (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered October 5, 2015, after he was found guilty of one count of person not to possess a firearm. We are constrained to affirm.

In September 2014, Appellant was charged with several crimes, including two counts of person not to possess a firearm, in relation to a shooting that occurred in 2013.  The victim, Leonard Figgins (Figgins), identified Appellant as the shooter.  On November 5, 2014, Appellant made an application to sever the two counts of person not to possess, which the trial court subsequently granted. In February 2015, Appellant proceeded to a jury trial on all charges except the two possession counts, and was acquitted.

_____

* Retired Senior Judge assigned to the Superior Court

Based upon, *inter alia*, the acquittal, Appellant filed a motion to quash the two outstanding person not to possess charges. The Commonwealth opposed the motion to quash, and subsequently filed its own motion, seeking to amend the information to add count 12, another person not to possess charge, based upon information received from testimony provided by a defense witness at Appellant's earlier trial. On June 4, 2015, the trial court granted both Appellant's motion to quash and the Commonwealth's motion to amend and a count of person not to possess a firearm was added to the information.

Appellant proceeded to a jury trial. At trial, Andre Hailstock (Hailstock) testified that on October 9, 2013, Hailstock, Appellant, and several other individuals, including Figgins were at a home on the 900 block of Fruit Street. N.T., 7/14/2015, at 22. Hailstock testified that he was with Appellant in the living room when Figgins approached, grabbed his coat, and asked Appellant to hand him a gun that was on a table near where Appellant was sitting.[1] Appellant complied and Figgins left the home. *Id.* at 23-24. Hailstock testified that he and Appellant were aware that Figgins had left the home with the firearm "to go rob a dice game." *Id.* at 26. Based upon the

---

[1] The firearm belonged to Figgins.

foregoing,[2] on July 15, 2015, Appellant was convicted of one count of person not to possess a firearm, and on October 5, 2015, the trial court sentenced Appellant to 30 to 60 months of incarceration.[3]

On October 17, 2017, Appellant filed a post-sentence motion *nunc pro tunc*.[4] The trial court scheduled a hearing where it heard argument from the

---

[2] Only Hailstock and Alex Glessner, a forensic DNA scientist for the Pennsylvania State Police testified. Mr. Glessner testified that Appellant's DNA was found on a Ruger Red Hawk revolver. N.T. 7/14/2015, at 44.

[3] At sentencing, it was determined that with Appellant's prior record score of four and an offense gravity score of five, the sentencing guideline range was nine to 16 months' incarceration, plus or minus three. Thus, the trial court imposed a sentence in excess of the guidelines, but within the statutory maximum. **See** N.T., 10/5/2015, at 8-9; 18 Pa.C.S. § 1104(1) ("A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than … [f]ive years in the case of a misdemeanor of the first degree.").

[4] After his sentencing hearing, Appellant inquired with the public defender's office, who was appointed to represent him, about filing an appeal on his behalf. Despite his inquiry, the deadline for filing an appeal passed without action. This prompted Appellant to file his first petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-9546, requesting the court reinstate his appellate rights *nunc pro tunc*. On July 25, 2016, the PCRA court granted Appellant's petition. Appellant filed an appeal challenging, *inter alia*, the discretionary aspects of his sentence. On appeal, this Court found Appellant's sentencing claim waived for failure to preserve properly his issue at sentencing or in a post-sentence motion. **Commonwealth v. Rain,** 170 A.3d 1186 (Pa. Super. 2017) (unpublished memorandum).

Appellant then filed his second PCRA petition contending his appellate counsel was ineffective for failing to preserve properly his sentencing claim. On October 10, 2017, the court once again entered an order reinstating his appellate rights *nunc pro tunc*, and Appellant filed the aforementioned post-sentence motion.

parties, including Appellant's counsel, who requested the trial court re-sentence Appellant within the standard range. N.T., 11/27/2017, at 2-4. Following the hearing, on November 30, 2017, the trial court denied Appellant's motion. Appellant thereafter timely filed a notice of appeal.[5]

Appellant's sole issue on appeal challenges the discretionary aspects of his sentence. Appellant's Brief at 4. Accordingly, we bear in mind the following.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his [or her] sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Here, Appellant timely filed a post-sentence motion *nunc pro tunc* and notice of appeal, and included a statement pursuant to Rule 2119(f) in his

---

[5] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

brief.[6]   We now turn to consider whether Appellant has presented a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.  *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007).  "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."  *Griffin*, 65 A.3d at 935 (citation and quotation marks omitted).

In his 2119(f) statement, Appellant states only that the trial court "abused its discretion when the [court] sentenced Appellant outside of the sentencing guidelines without putting sufficient reasons for said deviation on the record."  Appellant's Brief at 9.  Such a claim raises a substantial question for our review.  *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009) ("This [C]ourt has found that a claim the trial court failed to state its reasons for deviating from the guidelines presents a substantial question for review.").  We address the merits of this claim mindful of the following.

---

[6] Despite Appellant's woefully inadequate 2119(f) statement, *see* Appellant's Brief at 9, the Commonwealth has not objected, so we will consider whether Appellant has raised a substantial question for our review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, **an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.**
>
> * * *
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760-61 (Pa. Super. 2014)

(emphasis added; internal citations and quotation marks omitted).

> As a general matter, Pennsylvania's sentencing scheme, with its guidelines and suggested minimum sentences, is "indeterminate, advisory, and guided" in its nature. Pennsylvania judges retain **broad discretion** to sentence up to and including the maximum sentence authorized by statute; "the only line that a sentence may not cross is the statutory maximum sentence."

***Commonwealth v. Gordon***, 942 A.2d 174, 182 (Pa. 2007) (citations omitted; emphasis added). "Traditionally, the trial court is afforded broad discretion in sentencing criminal defendants 'because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.'" ***Commonwealth v. Mouzon***, 812 A.2d 617, 620 (Pa. 2002). ***See also Commowealth v. Melvin***, 172 A.3d 14, 21 (Pa. Super. 2017) ("To be clear, while the court must consider the guidelines, the court is also

- 6 -

afforded broad discretion in sentencing matters, as it is in the best position to evaluate the individual circumstances before it.").

In its opinion to this Court, the trial court responded to Appellant's claim as follows.

> Th[e trial c]ourt sentenced [Appellant] outside the sentencing guidelines and explained its reasoning extensively at the [s]entencing h]earing held on October 5, 2015. Th[e c]ourt's sentence and reasoning fully comply with 42 Pa.C.S. § 9721(b) and 42 Pa.C.S. §§ 9781(c) and (d). The [c]ourt discussed the nature of the offense and the fact that [Appellant] gave a gun to his friend knowing that the friend intended to commit armed robbery. Th[e trial c]ourt also considered [Appellant's] history, characteristics and reviewed his entire criminal history. [Appellant's] [j]uvenile [r]ecord consisted of six arrests, four adjudications, two adult arrests, one conviction, and two incarcerations, both lasting about nine months.
>
> The [c]ourt discussed the protection of the public, the gravity of the offense, the impact on the community and the victim, and [Appellant's] rehabilitative needs. The [c]ourt noted that this is not an offense in which there is a specific victim, however the strong impact on the community must be considered. The [c]ourt addressed the prevalence of gun violence in Mercer County and that [Appellant] contributed to this [] problem by handing a gun to a person who was going to commit a robbery. The [c]ourt also discussed the need to protect the community from gun violence. The [c]ourt specifically addressed [Appellant's] rehabilitati[ve] needs drawing attention to [Appellant's] repeat offenses and lack of remorse. The [c]ourt did consider the letters sent by members of the community speaking positively about [Appellant], however, the [c]ourt also noted that [Appellant] has a history of physical altercations and other violence throughout his past. Having considered all of this, the [c]ourt imposed a sentence that, while outside of the guidelines, complies fully with the law.

Trial Court Opinion, 2/14/2018, at 5-6 (unnumbered; citations omitted).

Indeed, at Appellant's sentencing hearing, on the record, the trial court stated the following.

As indicated by the Assistant District Attorney, you were found guilty by a jury on July 15[], 2015. And just as I don't take into consideration acquittals, nor am I allowed to, I do take into consideration that a jury has spoken in this case. That it was not a *de minimis* matter.

And I do believe that the Assistant District Attorney cited the record correctly, that the testimony from [Hailstock] was that you passed over the gun to [Figgins] knowing that he was going to go out and rob crap[s] games.

The presentence investigation [report (PSI)] indicates you're twenty-one. You have a GED.

Your co-[d]efendant [Figgins], if we can call him that because he's really not your co-[d]efendant on this charge, but he was involved in the underlying situation or the totality of the situation, did receive a state sentence. Of course, he was convicted on much different charges.

Juvenile record indicates six arrests, four adjudications; two adult arrests, one conviction. Two incarcerations, one lasted about nine months and the other maybe a little bit less than that.

[A]lthough your attorney has argued, primarily focusing on what's become of you since the last time you got out of jail, I am required and I do think it's important that I consider a -- consider the past. The juvenile supervision adjustment indicates you were placed in shelter care from March 27[], 2008 to April 14[], 2008. You then went to a boot camp from April 14[], 2008 to July 8[], 2008. You then went home from July 8[], 2008 to November 27[], 2008, when you had new charges. You were back to shelter care from November 27[], 2008 to March 6, 2009.

You went into the Adelphoi Village secure facility from March 6[], 2009 to July 30[], 2009. And then to … the Greystone Group Home from July 30[], 2009 to December 7[], 2009. Came back home again on December 7[], 2009 until June 22[],

2011, when you had new charges again. Back to shelter care from June 22[], 2011 to June 27[], 2011. Placed in the New Castle YDC from June 27[], 2011 to January 12[], 2012. Then back home again on January 12[], 2012 until January 25[], 2012, when you had parole violations and back in shelter care from July 25[], 2012 to July 27[], 2012.

You then came home on house arrest on July 27[], 2012, and finished on house arrest on March 15[], 2012 [], when you turned eighteen.

The juvenile offenses were two counts of [d]isorderly [c]onduct and [a]ggravated [a]ssault and then another [d]isorderly [c]onduct and then an [e]scape from the shelter care.

Your adult record, you were acquitted twice and then you had your current case where you were convicted. You noted in -- the PSI notes you had a close family relationship. You have no real drug or alcohol issues. You're single with no children.

You reported to the … auditor that you're not a violent person and you describe yourself as someone who tries to de-escalate a volatile situation. And you had an anger management while in juvenile placement.

Your work history indicates you worked for an uncle and you then you had the job in Georgia for about three months and lately now, it's been testified here, that you are a bouncer in a bar. … [Y]ou did say you [] clean the bar after it closes as well.

The sentencing guidelines are an [o]ffense [g]ravity [s]core of five, [p]rior [r]ecord [s]core of four. Standard range is nine to sixteen, plus or minus three.

I've noted already and I'll note again I did consider the sentencing memorandum and the various letters, some of whom [are] from people I know. And they do report on you regarding your past mistakes, noting your past mistakes, and that you're changing your life. And certainly I've heard the witnesses testify today, including your mom.

I'm required by law to consider the impact of the crime on the victim. In essence, there is no victim here because this was a possession charge.

The impact on the community. The offense does have a great impact on the community. I don't view it as *de minim[i]s*. Gun violence is prevalent in parts of Mercer County. Everyone walks in fear because of the prevalence of guns.

By the testimony in this trial, you were sitting in someone's home and there's a gun sitting on the table. Just part of the décor. You were part of that. That was your life. And when someone wanted the gun to go rob crap[s] games, you just handed it to him.

I have to consider the safety of the community. There is a strong need to protect the community from gun violence. People need to be safe from guns everywhere. In their homes, in their work, and certainly in their neighborhoods.

Must also consider your rehabilitation needs. Your record shows that for a significant period of time you were a regular offender. Despite many placements, you re-offended soon after returning home. Despite juvenile placements and incarceration, you offended again.

I do note the letters that admired your attempt to change your life and that you try to speak to youth groups about your mistakes.

I also consider your attitude. It appears that the people that have written on your behalf certainly believe your attitude has changed. You're trying to become a better person. You correctly indicate you recognize your mistakes.

What I didn't see anywhere is any suggestion of remorse on your part. Maybe that's implied from the course of conduct you're now trying to follow. None of the letters ever mention[s] specifically remorse or that you've showed remorse. They do show you've tried to help others avoid what you went through.

You made mistakes, admit to them, but don't really apologize for them. You told the … PSI auditor that you're a non[-]violent person and you act as a de-escalator, you try to

- 10 -

de-escalate a violent situation. Well, let's talk about that. Were you a de-escalator in the first of your two [d]isorderly [c]onducts when you were a juvenile? You told the PSI auditor you were involved in a physical altercation at Sharon High School. You would not calm down, you screamed obscenities at the police and were jumping around.[7]

* * *

I've tried to look at everything, []including [Appellant's] past, which I do think is significant; the fact that this involved a gun, a gun that was then used, at a minimum, to rob crap[s] games.

I do take seriously the letters that were written and the things that have been said upon [Appellant's] behalf. But I note there were periods of time when he came home and then got in trouble again. That seemed to be a repetitive situation. He hasn't yet, but, of course, he knew he had -- was facing trial in this case and now sentencing on this case. Does that explain some of his behavior?

* * *

The [trial court] notes that the sentence is outside the standard range of the guidelines, but believes that it is an appropriate sentence due to the seriousness of the offense, the impact of the crime on the community, the need to keep the community safe.

[Appellant has] been in multiple placements, including incarceration, but continue[d] to offend. I am not seeing remorse. I'm seeing someone who's telling me they're trying to change their life. I question your credibility. You told the auditor you were a de-escalator and I saw no de-escalation in any of your conduct.

N.T., 10/5/2015, at 32-42.

---

[7] The trial court then went on to note several other instances in which the court found Appellant did not act as a de-escalator. This included other crimes of violence, as well as several misconducts Appellant received while incarcerated. *See* N.T., 10/5/2015, at 38-40.

Here the trial court provided reasons for the sentence imposed including, *inter alia*, the seriousness of the crime, the protection of the public against gun violence, which has been a prevalent problem in Mercer County according to the trial court, and Appellant's lack of remorse and rehabilitation despite several placements, arrests, and incarcerations. **Id.** at 42. The court also acknowledged the sentencing guidelines prior to imposing an above the guideline range sentence. **Id.** at 8.

In addition, the trial court received and reviewed a PSI prior to sentencing. "[W]here the sentencing judge had the benefit of a PSI, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Boyer**, 856 A.2d 149, 154 (Pa. Super. 2004). The court stated on multiple occasions that it considered the mitigating information presented by Appellant and that it took the letters and statements made on Appellant's behalf "seriously." N.T., 10/5/2015, at 41. Nonetheless, for the reasons cited *supra*, the sentencing court concluded that the imposition of an above-guideline sentence was appropriate.

We are cognizant that gun violence plagues our society. We are also keenly aware that courts must punish individuals who use firearms to break the law and help to perpetuate crimes in our communities. However, in this case, we are troubled with the imposition of an above-guideline-range

- 12 -

sentence based on the facts before us. While we do not find his act "*de minimis*," Appellant's actions narrowly meet the definition set forth in 18 Pa.S.C. § 6105 (a)(1),[8] which makes the imposition of a statutory maximum sentence troubling.

Nonetheless, based on the record before us and the limited review this Court has when considering sentencing claims, as cited in more detail *supra*, we cannot find, nor has Appellant convinced this Court that, the trial court's determination was manifestly unreasonable, a misapplication of the law or was the product of partiality, prejudice, bias, or ill-will.[9] "[I]f the sentencing

---

[8] A person convicted of an enumerated offense set forth in the statute "shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.S.C. § 6105 (a)(1).

[9] Lastly, we note that although Appellant only raises the aforementioned issue in his 2119(f) statement, the argument section of his brief raises several additional arguments in support of his contention that an above the guideline range sentence was inappropriate. Specifically, Appellant avers the trial court failed "to take into consideration the mitigating factors presented by Appellant" and found that Appellant lacked remorse. Appellant's Brief at 12. Furthermore, Appellant contends his possession of the firearm was *de minimis*, that the trial court took into consideration Figgins's actions at Appellant's sentencing hearing, and that he was not involved in a crime of violence or gun violence. *Id.* at 14. With that in mind, Appellant avers the trial court erred in relying on the sentence Figgins received, especially since Figgins was convicted of crimes that varied greatly from, and were "far more serious than, the charge for which Appellant was convicted." *Id.* Lastly, Appellant argues the trial court's emphasis on the protection to the public and his juvenile record were misplaced. *Id.* at 13-16.

Assuming *arguendo* that Appellant preserved properly these claims and raised substantial questions for our review, he would still not be entitled to relief. At sentencing, the trial court heard and considered statements
*(Footnote Continued Next Page)*

- 13 -

court, after considering the appropriate [] sentencing factors, states valid reasons for its sentence, which are supported by the record, this Court must affirm the decision even if the particular panel does not agree with the weight the sentencing court accorded them." ***Commonwealth v. Marts***, 889 A.2d 608, 616 (Pa. Super. 2005). ***See also Commonwealth v. Stewart***, 867 A.2d 589, 592 (Pa. Super. 2005) ("It is not the function of an appellate court to determine whether it would have imposed the same sentence as the trial court.").

In light of the foregoing, we are constrained to affirm.

*(Footnote Continued)* ——————————

from Appellant, his pastor, and his mother, as well as reviewed various letters in support of Appellant. Additionally, the court received and reviewed Appellant's PSI report and as our case law notes, the trial court is in the best position to consider these factors and evaluate Appellant's remorse. ***See Mouzon***, ***supra***. Likewise, we find Appellant's complaint about the court's discussion of Figgins' actions and sentence at Appellant's sentencing hearing meritless. We find nowhere in the record, and Appellant has failed to convince this Court, that the trial court considered improper factors when sentencing Appellant. To the contrary, we find the trial court mentioned Figgins to highlight that Appellant was aware that the firearm he passed off to Figgins was going to be used to commit an armed robbery. To wit, the court acknowledged that although Figgins received a lengthy sentence, he "was convicted on much different charges." N.T., 10/5/2015, at 33.

Nor has this Court been convinced that the trial court erred by considering Appellant's juvenile record and emphasizing the impact Appellant's crime had on the community. When sentencing a defendant, the trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). The aforementioned considerations were proper and balanced by the court's recognition of the mitigating evidence presented by Appellant.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/14/2018